**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TZVI SMALL, MD, *Plaintiff*, v. ANTHEM BLUE CROSS BLUE SHIELD, *Defendant*. | Civil Action No. 24-9680 **OPINION** September 30, 2025 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendant Anthem Blue Cross Blue Shield's ("Defendant") motion to dismiss Plaintiff Tzvi Small, MD's ("Plaintiff" or "Dr. Small") Complaint. (ECF 1-1, "Compl."; ECF 9-1, "Def. Mot.")  Plaintiff opposed the motion. (ECF 11, "Opp.")  Defendant filed a reply and letter of supplemental authority. (ECF 14, "Reply"; ECF 17, "Def. Let.")  The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

**I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

This suit arises from a dispute over reimbursement through a health care plan for medical services provided by Plaintiff, who is a medical provider specializing in plastic and reconstructive

---

[1] The facts and procedural history are drawn from the Complaint (ECF 1) and documents integral or relied upon by the Complaint.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the complaint are accepted as true.  *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

1

surgery. (Compl. ¶ 1.) On September 13, 2021, Dr. Small performed a post-mastectomy bilateral breast cancer reconstruction on a patient with the initials K.C. (the "Patient"), which is an elective procedure, at the Valley Hospital in Ridgewood, New Jersey. (*Id.* ¶ 5.) At the time of the surgery, the Patient maintained health benefits through her employer, Mediacom Communications, Inc., which provided health insurance through a group insurance contract administered by Defendant (the "Plan"). (*See* ECF 9-6, 2021 Plan, "Ex. A"; ECF 9-7, 2022 Plan, "Ex. B.") The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and contains an anti-assignment clause. (*See* Ex. A at 62.) The Patient was allegedly referred to Dr. Small, an out-of-network provider, by an in-network provider who believed Dr. Small could best serve the Patient. (*Id.* ¶ 8.)

As an out-of-network provider, Dr. Small did not have a network contract with Defendant to establish reimbursement rates. (*Id.* ¶ 7.) Plaintiff claims that Defendant granted **the Patient** an in-network exception to utilize his services "pursuant to Defendant's network adequacy provision" known in the industry as a "gap exception."[2] (*Id.* ¶¶ 9-10.) Plaintiff alleges that this in-network exception entitled him to the same insurance coverage afforded to an in-network provider. (Compl. ¶¶ 10-11.) After the surgery, Plaintiff submitted a bill to Defendant for reimbursement of $170,798.00 for his services and $42,699.50 for the services of his assistant surgeon. (*Id.* ¶¶ 12, 14.) But Defendant denied reimbursement in full, "leaving the entire bill unpaid." (*Id.* ¶ 13.) Plaintiff submitted two internal appeals to Defendant disputing the terms of the in-network exception, which Defendant denied, finding Dr. Small's claim was processed correctly. (*Id.* ¶ 16.)

---

[2] "An in-network exception, otherwise known as gap exception, is a term of art within the healthcare industry, in which the insurance carrier agrees to extend coverage for an out-of-network service or provider, in a manner which limits **the patient's** cost-sharing liability to the amount that would apply if **the patient** had received in-network treatment." (Compl. ¶ 10) (emphasis added).

2

On January 18, 2022, Dr. Small performed a second procedure, a bilateral breast revision with local tissue arrangement, on the Patient. (*Id.* ¶ 18.) Defendant again granted ***the Patient*** an in-network exception through the Plan's network adequacy provision. (*Id.* ¶ 19.) Defendant allowed payment of $4,657.17 on this procedure and determined that the remainder of the bill, $37,151.55, was neither Defendant's nor the Patient's responsibility. (*Id.* ¶ 23.) Plaintiff does not claim that he represents the Patient nor does Plaintiff allege he received a Power of Attorney ("POA") assigning him Patient's right to bring a claim.

On September 5, 2024, Plaintiff filed his Complaint in the Superior Court of New Jersey, Bergen County, asserting one claim for promissory estoppel. (*Id.* ¶ 32.) Specifically, Plaintiff alleges that Defendant "made a clear and definite promise to Plaintiff that Plaintiff's medical treatment of Patient would be covered pursuant to an in-network exception." (*Id.* ¶ 33.) Plaintiff claims that Plaintiff reasonably relied on Defendant's promise to reimburse him for the surgery and that Defendant's denial of payment caused him substantial detriment, damages, and as a result Plaintiff "continues to suffer damages in the operation" of his medical practice. (*Id.* ¶¶ 37-39.) On October 9, 2024, Defendant timely removed the case to federal court. (ECF 1, Notice of Removal.) In lieu of an answer, Defendant moved to dismiss Plaintiff's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Def. Mot.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Because "[p]reemption is an affirmative defense that the defendant has the burden to prove," a defendant moving to dismiss under Rule 12(b)(6) based on preemption must show that federal preemption is "apparent on the face of the complaint and documents relied on in the complaint." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (quotation marks omitted); *see, e.g. MedWell, LLC v. Cigna Corp.,* 2021 WL 2010582, at *6 (D.N.J. May 19, 2021) (addressing ERISA preemption on a Rule 12(b)(6) motion). While motions to dismiss for lack of standing are generally assessed under Rule 12(b)(1), motions to dismiss for lack of derivative standing under ERISA are assessed under the Rule 12(b)(6) framework. *North Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015).

### III.    ANALYSIS

Defendant argues that Plaintiff's promissory estoppel claim is expressly preempted by ERISA, 29 U.S.C. § 1001 *et seq*. (Def. Mot. at 5.) Defendant also argues that Plaintiff did not plead adequate facts to demonstrate a promise under his promissory estoppel claim. (*Id.* at 12-13.).

4

Plaintiff argues that his claim cannot be preempted by ERISA because the anti-assignment provision in the Plan would deprive him of any remedy or recourse. (Opp. at 6-7.) Finally, Defendant argues that Plaintiff's claim of promissory estoppel does not create an independent legal duty separate from ERISA and thus must still be preempted. (Reply at 3.)

### A. ERISA Preemption

Preemption "fundamentally is a question of congressional intent." *English v. General Electric Co.*, 496 U.S. 72, 79 (1990). "Congress enacted ERISA to protect 'the interests of participants in employee benefit plans and their beneficiaries,' by establishing, inter alia, 'standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for . . . ready access to the Federal courts.'" *Kotok v. A360 Media, LLC*, No. 22-4159, 2023 WL 1860595, at *3 (D.N.J. Feb. 9, 2023) (quoting 29 U.S.C. § 1001(b)). ERISA "provide[s] a uniform regulatory regime over employee benefit plans" and ensures that the regulation of such plans "would be exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quotation marks omitted).

ERISA is recognized as having "extraordinary pre-emptive power." *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *Plastic Surgery Ctr., PA v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020). Here, Plaintiff's state law claim for promissory estoppel is preempted by ERISA because it relates to the Plan, and Plaintiff has not demonstrated an independent legal duty aside from the obligations of the ERISA plan itself.

1. **Express Preemption**

The Court agrees with Defendant that Plaintiff's promissory estoppel claim is expressly preempted by ERISA. Plaintiff relies on *McCulloch v. Maryland Orthopaedic Surgical Serv., PLLC v. Aetna Inc* to argue that preemption "would deprive [him] of a remedy to enforce the promises made by Defendant to Plaintiff" due to the anti-assignment provision of the Plan. (Opp. at 6); *see McCulloch v. Maryland Orthopaedic Surgical Serv., PLLC v. Aetna Inc.*, 857 F.3d 141, 148 (2d Cir. 2017). But *McCulloch* it is not binding in this Circuit. The Third Circuit has directly addressed the concerns raised by *McCulloch* and held that anti-assignment clauses are generally enforceable. *See American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 454 (3d Cir. 2018) ("anti-assignment clauses in ERISA-governed health insurance plans are generally enforceable").

The preemptive power of ERISA is so vast "that it converts an ordinary state common law complaint into one stating a federal claim." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399 (3d Cir. 2004) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 211 (2004)). "State common law claims fall within this definition and, therefore, are subject to ERISA preemption." *Nat'l Sec.*, 700 F.3d at 83. "The test for whether a state law cause of action 'relate[s] to an employee benefit plan is whether "it has connection with or reference to such a plan." *Id.* (citing *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001). "A state law 'relates to' an employee benefit plan if it (1) 'has a 'reference to' ERISA plans' or (2) if it 'has an impermissible 'connection with' ERISA plans.'" *Advanced Orthopedics & Sports Med. Inst., P.C. v. Oxford Health Ins., Inc.*, No. CV 21-17221, 2022 WL 1718052, at *3 (D.N.J. May 27, 2022) (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016)).

State law claims alleging the "denial of benefits or improper processing of benefits" under an ERISA plan are expressly preempted. *Menkes v. Prudential Ins. Co. of Am.,* 762 F.3d 285, 296 (3d Cir. 2014). Here, Plaintiff's claim explicitly references and relies on the ERISA-governed Plan. (*See* Compl. ¶ 10); *see also Peer Grp. For Plastic Surgery, PA v. United Healthcare Servs.*, No. 23-2073, 2024 WL 1328134, at*6 (D.N.J. Mar. 28, 2024) (finding ERISA preempts where determining the merits of plaintiff's state law claims involved examining gap-exception to determine benefits of ERISA-governed plan); *East Coast Adv. Plastic Surgery v. Aetna Inc.*, No. 18-9429, WL 2223942, at *3 (D.N.J. May 23, 2019) (finding ERISA preempts state law claims where the court "would be required [to] reference the [ERISA-governed] plan to decide any of Plaintiff's state law claims.").

Put simply, there would be no cause of action without the Plan. *See Est. of Jennings v. Delta Air Lines, Inc.*, 126 F. Supp. 3d 461, 466 (D.N.J. 2015) ("A state law cause of action 'relates to' an employee benefits plan if, without the plan, there would be no cause of action.") Because Plaintiff's claim both has "a reference to" and "impermissible connection with" an ERISA plan, it expressly preempted by the ERISA statute. *Nat'l Sec.*, 700 F.3d at 83.

   **2. Independent Legal Duty**

Plaintiff relies on *Plastic Surgery* to argue that his promissory estoppel claim as alleged in the Complaint creates a separate legal duty that is independent from the ERISA plan itself. (Opp. at 7-8.) In *Plastic Surgery*, "[t]he Third Circuit found that the plaintiff's breach of contract and promissory estoppel claims did not 'relate to' an ERISA plan, because the parties' 'oral agreements' gave rise to a freestanding contract which defined the scope of the medical procedures the plaintiff agreed to perform, and the amount that the defendant promised to provide in exchange for those services." *Advanced Orthopedics*, 2022 WL 1718052, at *6 (citing *Plastic Surgery*, 967 F.3d at

231-32). "[A]s alleged, it is [defendant's] oral offers or promises (as the case may be) rather than the terms of the plan that define the scope of [defendant's] duty, the plans are not 'critical factor[s] in establishing liability.'" *Plastic Surgery*, 967 F.3d at 230 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139-40 (1990)).

But Plaintiff has not alleged any facts to demonstrate that there was an oral or written promise made to him. *Plastic Surgery* case turned on oral agreements between the parties, including several detailed phone calls, 967 F.3d at 233, and though Dr. Small makes general assertions in his reply brief that discovery will reveal other communications with Defendant, he does not elaborate on what those communications are or provide any details about those communications. (Reply at 11.) Critically, the Complaint does not reference any of these alleged communications, in fact it does not reference *any* external promise made to Dr. Small that he allegedly relied upon. For the purposes of a 12(b)(6) motion, the Court cannot consider any facts outside the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997) (a district court is "not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based.") Therefore, Plaintiff has failed to allege a separate legal duty from the obligations in the ERISA plan itself.

Furthermore, *Plastic Surgery* is factually distinct from Plaintiff's claim here. *Plastic Surgery* concerned an "ad hoc arrangement" in which "the provider agree[d] to render services (which [were] *not* covered by the terms of the plan)." *Advanced Orthopedics,* 2022 WL 1718052, at *8 (emphasis in original) (citing *Plastic Surgery*, 967 F.3d at 229). Though Dr. Small alleges that he was promised a gap exception from Defendant, the facts he proffers in the Complaint allege only that "Defendant granted **Patient** an in-network exception pursuant to Defendant's 'network adequacy provision.'" (Compl. ¶ 9) (emphasis added). Plaintiff argues that he is entitled to

reimbursement because Defendant granted his patient an in-network exception, which is separate and distinct from the ad hoc arrangement between the provider and insurer in *Plastic Surgery*. *See Brainbuilders LLC v. Aetna Life Ins. Co.*, No. 17-03626, 2024 WL 358152, at *12 (D.N.J. Jan. 31, 2024) (distinguishing *Plastic Surgery* and finding the claims were not from "a freestanding agreement" with the insurer, but instead "the ERISA plans' coverage for out-of-network services.")

The Court also notes that due to the anti-assignment provision in the Plan, it appears Plaintiff lacks standing under ERISA, though that argument is not presently before the Court. *See Plastic Surgery*, 967 F.3d at 229 ("the rising prevalence of anti-assignment provisions signals **the proverbial end of the road for relief under section 502(a)** ") (emphasis added).

### IV. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss (ECF 9) is **GRANTED**. Plaintiff's Complaint (ECF 1) is **DISMISSED** without prejudice. Plaintiff may file an amended pleading that is consistent with this Opinion within thirty (30) days of the date of the Opinion and accompanying Order. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Andre M. Espinosa, U.S.M.J.
      Parties